_____

No. 95-1700MN
_____

Jane Marie Egerdahl,                   *
                                       *
          Appellant,                   *
                                       *
     v.                                *
                                       *   On Appeal from the United
                                       *   States District Court
Hibbing Community College;             *   for the District of
Minnesota Community College            *   Minnesota.
System; State of Minnesota;            *
Myron Schmidt; Anthony Kuznik;         *
and Jerry Krause,                      *
                                       *
          Appellees.                   *

_____

          Submitted:  October 19, 1995

             Filed:  December 18, 1995
_____

Before RICHARD S. ARNOLD, Chief Judge, WHITE,* Associate Justice, and
     LOKEN, Circuit Judge.
_____

RICHARD S. ARNOLD, Chief Judge.

     Jane Marie Egerdahl claims that the State of Minnesota, the Minnesota
Community College System, Hibbing Community College ("Hibbing"), and three
Hibbing employees discriminated against her on the basis of race and gender
and, therefore, violated Title IX of the Education Amendments of 1972, 20
U.S.C. § 1681 ("Title IX"), 42 U.S.C. § 1981, 42 U.S.C. § 1983, Title VI
of the Civil Rights

---

     *The Hon. Byron R. White, Associate Justice, Retired, Supreme
Court of the United States, sitting by designation.

Act of 1964, 42 U.S.C. § 2000d ("Title VI"), and the Equal Protection Clause of the Fourteenth Amendment. The District Court dismissed Egerdahl's suit. We reverse the District Court's dismissal of Egerdahl's Title IX and Title VI claims, but affirm its decision to dismiss her § 1981, § 1983, and equal-protection claims.

## I.

During the fall of 1992, Jane Marie Egerdahl, who is part Native American, enrolled in a chemistry class at Hibbing Community College, a state-run school that receives federal funds. Egerdahl claims that Jerry Krause, a chemistry instructor at Hibbing, engaged in a pattern of discriminatory treatment based on Egerdahl's race and gender. According to Egerdahl, she reported Krause's conduct to Hibbing's Dean, Myron Schmidt, and its President, Anthony Kuznik, but the discrimination continued throughout the fall semester.

On October 1, 1993, Egerdahl filed charges with the Minnesota Department of Human Rights, claiming that the defendants had violated the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363.03. Egerdahl then withdrew her charge with the Department of Human Rights and, on June 7, 1994, filed this complaint in federal court, alleging violations of Title IX, § 1981, § 1983, the Equal Protection Clause, the MHRA, and state tort law. She later amended her complaint to drop her state-law claims and to add a claim under Title VI.

The District Court dismissed Egerdahl's suit. It held that Egerdahl's Title VI and Title IX claims were governed by the MHRA's one-year statute of limitations, Minn. Stat. § 363.06, subd. 3, and that this limitations period had run before Egerdahl filed suit in federal court. The District Court also held that the Eleventh Amendment barred Egerdahl's § 1981, § 1983, and equal-protection

claims.

## II.

Egerdahl argues that the District Court erred by holding that the MHRA's one-year statute of limitations governs Title VI and Title IX claims. She asserts that the appropriate statute of limitations is the six-year limitations period of Minnesota's personal-injury statute, Minn. Stat. § 541.05, subd. 1(5). We agree.

When, as in the case of Title VI and Title IX, a federal statute does not contain a limitations period, courts must select "the most appropriate or analogous state statute of limitations." Goodman v. Lukens Steel Company, 482 U.S. 656, 660 (1987). The District Court relied on its decision in Deli v. University of Minnesota, 863 F. Supp. 958 (D. Minn. 1994), which held that the MHRA's limitations period should apply to Title IX claims because "[b]oth the MHRA and Title IX proscribe discrimination in educational institutions on the basis of gender and essentially seek to make whole the victims of such discrimination." Id. at 962.[1] In addition,

_____

[1]The MHRA provides:

It is an unfair discriminatory practice:

(1) To discriminate in any manner in the full utilization of or benefit from any educational institution, or the services rendered thereby to any person because of race, color, . . . [or] sex . . ..

. . .

Minn. Stat. § 363.03, subd. 5.

Under Title IX,

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving federal assistance.

20 U.S.C. § 1681.

the District Court extended the reasoning that

it employed in <u>Deli</u> to Title VI claims.  It concluded that because Title VI and the MHRA both prohibit racial discrimination by educational institutions,[2] the MHRA's one-year limitations period should govern claims under Title VI as well as those under Title IX.

We think that the District Court's decision is inconsistent with <u>Wilson v. Garcia</u>, 471 U.S. 261 (1985), which held that 42 U.S.C. § 1983 claims are subject to the limitations period in each state's personal-injury statute.[3]  In <u>Wilson</u>, the Supreme Court rejected the argument that § 1983 claims should be governed by the period of limitations in states' civil-rights statutes.  The Court held that § 1983 claims are better characterized as personal-injury actions because it is unlikely that the limitations period for personal-injury actions "ever was, or ever would be, fixed in a way that would discriminate against federal claims, or be inconsistent with federal law in any respect."  <u>Id.</u> at 279.  The same reasoning applies to Title VI and Title IX claims.

Moreover, the District Court's decision fails to take into account the federal interest in uniformity and certainty.  See <u>id.</u>

---

[2]Title VI provides:

> No person in the United States shall, on grounds of race, color or national origin, be excluded from participation in, denied the benefits of, or be subjected to discrimination under any program receiving federal assistance.

42 U.S.C. § 2000d.

[3]In Minnesota, § 1983 claims are governed by the six-year limitations period of Minnesota's personal-injury statute, Minn. Stat. § 541.05, subd. 1(5).  <u>Berg v. Groschen</u>, 437 N.W.2d 75, 77 (Minn. App. 1989).

at 275.  "Title VI is a civil rights statute [that is] closely analogous to sections 1983 and 1981."  Baker v. Board of Regents of State of Kan., 991 F.2d 628, 631 (10th Cir. 1993).  Indeed, a plaintiff suing a federally-supported program for racial discrimination may bring a claim under any one of these three laws.  Because the Supreme Court has characterized both § 1983 and § 1981 as personal-injury statutes, see Goodman, 482 U.S. at 661-62, Title VI claims should also be governed by the limitations period in Minnesota's personal-injury statute.  See Taylor v. Regents of Univ. of Cal., 993 F.2d 710, 712 (9th Cir. 1993), cert. denied, 114 S. Ct. 890 (1994) (Title VI claims should be governed by the same statute of limitations that applies to § 1983 claims); Baker, 991 F.2d at 631 (characterizing Title VI claims as personal-injury actions "promotes a consistent and uniform framework by which suitable statutes of limitations can be determined for civil rights claims."); Chambers v. Omaha Pub. Sch. Dist., 536 F.2d 222, 225 n.2 (8th Cir. 1976) (Title VI claims are "controlled by the same considerations which inhere in . . . § 1981 and § 1983 claims.").

As for Title IX, it is also analogous to § 1983 -- both statutes prohibit gender discrimination by state-run schools that receive federal funds.  See Bougher v. University of Pittsburgh, 882 F.2d 74, 77-78 (3d Cir. 1989).  Furthermore, "Title IX was patterned after Title VI.  . . . Except for the substitution of the word `sex' in Title IX to replace the words `race, color or national origin' in Title VI, the two statutes use identical language to describe the benefited class."  Cannon v. University of Chicago, 441 U.S. 677, 694-95 (1979).  Therefore, Title IX should be subject to the same limitations period that applies to § 1983 and Title VI.

We hold that the six-year limitations period of Minn. Stat. § 541.05, subd. 1(5) governs Title VI and Title IX claims.  Because this six-year period did not expire before Egerdahl filed suit in federal court, we reverse the District Court's dismissal of

Egerdahl's Title VI and Title IX claims.

### III.

Egerdahl also appeals the dismissal of her § 1981, § 1983, and equal-protection claims.  We affirm as to these claims.

### A.

We first address Egerdahl's argument that Congress abrogated Minnesota's Eleventh Amendment immunity from Egerdahl's equal-protection claims.  Generally, "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."  Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).  Congress may pass legislation under the Commerce Clause or Section 5 of the Fourteenth Amendment to override states' Eleventh Amendment immunity.  See Pennsylvania v. Union Gas Co., 491 U.S. 1, 14-23, 57 (1989); Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976).  But Congress must make its intention to abrogate states' immunity "unmistakably clear in the language of the statute."  Atascadero State Hospital v. Scanlon, 473 U.S. 234, 242 (1985).

Egerdahl asserts that 42 U.S.C. § 2000d-7(a)(1) overrides states' immunity from equal-protection claims that are brought in suits that also allege violations of Title VI or Title IX.  Section 2000d-7(a)(1) provides that

> [a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . ., title IX of the education amendments of 1972 . . ., the Age Discrimination Act of 1975 . . ., title VI of the Civil Rights Act of 1964 . . ., or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

Although section 2000d-7(a)(1) does abrogate states' Eleventh Amendment immunity from Title VI and Title IX claims, see Franklin v. Gwinett County Pub. Sch., 503 U.S. 60, 72 (1992), it does not even mention the Equal Protection Clause.  Section 2000d-7(a)(1), therefore, does not provide unmistakable evidence of a congressional intent to override states' immunity from equal-protection claims, whether or not these claims are brought in suits that also allege violations of Title VI or Title IX.[4]

B.

Finally, Egerdahl argues that the District Court erred by holding that her § 1981 and § 1983 claims against Kuznik, Schmidt, and Krause were barred by the Eleventh Amendment because she failed to sue these defendants in their personal capacities.

The Eleventh Amendment does not prevent a plaintiff from seeking damages from a state official if she sues the official in his personal capacity.  See, e.g., Scheuer v. Rhodes, 416 U.S. 232, 238 (1974).  In Nix v. Norman, 879 F.2d 429 (8th Cir. 1989), we held that a plaintiff who wishes to sue a state official in his personal capacity must so specify in her complaint.  Id. at 431.  If a plaintiff's complaint is silent about the capacity in which she is suing the defendant, we interpret the complaint as including only official-capacity claims.  See DeYoung v. Patten, 898 F.2d

---

[4]Egerdahl cites Sharif by Salahuddin v. New York State Educ. Dept., 709 F. Supp. 345 (S.D.N.Y. 1989), a Title IX case in which the court held that the Eleventh Amendment did not bar the plaintiff from also bringing an equal-protection claim against the New York State Education Department.  See id. at 358.  But Sharif does not provide support for Egerdahl's argument.  The plaintiff in Sharif sought an injunction against the Commissioner of Education. Sharif is simply an example of the Ex parte Young, 209 U.S. 123 (1908), exception to the Eleventh Amendment, which permits suits against state officials for "prospective injunctive relief to prevent a continuing violation of federal law."  Green v. Mansour, 474 U.S. 64, 68 (1985).

628, 635 (8th Cir. 1990), <u>overruled on other grounds by</u> <u>Forbes v. Arkansas</u>
<u>Educ. Television Communication Network Found.</u>, 22 F.3d 1423 (8th Cir.) (en
banc), <u>cert.</u> <u>denied</u>, 115 S. Ct. 500 (1994).  Citing <u>Nix</u> and <u>DeYoung</u>, the
District Court held that because Egerdahl's amended complaint did not
indicate that she was suing Kuznik, Schmidt, and Krause in their personal
capacities, Egerdahl sued these defendants only in their official
capacities.

Egerdahl asserts that because the caption and body of her complaint
referred to Kuznik, Schmidt, and Krause by name rather than by official
position, her complaint provided these three defendants with ample notice
that she was suing them in their personal capacities.  Egerdahl also points
out that in her response to the motions of Kuznik, Schmidt, and Krause to
dismiss her § 1981 and § 1983 claims, she asked the District Court to
construe her amended complaint as seeking damages from the defendants in
their personal capacities.  Egerdahl contends that this request provided
the defendants with sufficient notice.  We reject both arguments.  <u>Nix</u>
requires that a plaintiff's complaint contain a clear statement of her wish
to sue defendants in their personal capacities.  Neither a cryptic hint in
a plaintiff's complaint nor a statement made in response to a motion to
dismiss is sufficient.

Egerdahl also argues that the District Court erred by not permitting
her to correct her omission by amending her complaint a second time.  The
decision whether to allow a party to amend her complaint "is left to the
sound discretion of the district courts."  <u>Humphreys v. Roche Biomedical</u>
<u>Laboratories, Inc.</u>, 990 F.2d 1078, 1081 (8th Cir. 1993).  A district court
may refuse to grant leave to amend if the plaintiff had an earlier
opportunity to cure a defect in her complaint but failed to do so.  Wright,
Miller & Kane, <u>Federal Practice and Procedure</u> § 1487, at 643-45 (2d ed.
1990); see, <u>e.g.</u>, <u>Smith v. Ayres</u>, 845 F.2d 1360, 1366 (5th Cir. 1988).
Egerdahl had such an opportunity when she amended her complaint the first
time.  Moreover, six days before Egerdahl

amended her complaint, Kuznik and Schmidt filed a motion to dismiss which cited Nix and DeYoung and, thus, informed Egerdahl how to sue the defendants in their personal capacities. In light of Egerdahl's lack of diligence, we do not think that the District Court abused its discretion by denying her leave to amend her complaint a second time.

IV.

For these reasons, we affirm the District Court's dismissal of Egerdahl's § 1981, § 1983, and equal-protection claims, but reverse its dismissal of Egerdahl's Title VI and Title IX claims. We remand this cause to the District Court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-