**Robert Lee POOLE, Plaintiff,**

v.

**JEFFERSON COUNTY SHERIFF'S DEPARTMENT, et al., Defendants.**

No. 91–CV–955.

United States District Court, E.D. Texas, Beaumont Division.

March 19, 1996.

Robert Lee Poole, Lompoc, CA, Pro Se.

Michael Abbott, Orange, TX, for Robert Lee Poole.

Richard F. Baker, Roger Neiland Fry, District Attorney's Office, Jefferson County, Beaumont, TX, for John Cascio.

### MEMORANDUM OPINION

COBB, District Judge.

In this prisoner's civil rights case, the Defendants move for Summary Judgment on the issue of administrative segregation of a pretrial detainee. Having considered the scant legal analysis presented by the movant, the motion is in all things denied.

### Background

Plaintiff brought his original complaint pursuant to 42 U.S.C. § 1983 on December 27, 1991, alleging denial of visitation, denial of religious visits, denial of access to a law library, denial of recreation privileges, denial of phone privileges, invasion of privacy, and denial of due process in segregation. Plaintiff's claim concerning telephone privileges was dismissed pursuant to 28 U.S.C. § 1915(d). By order dated August 13, 1992, Plaintiff's remaining claims were forwarded to the Defendants for answer.

On September 24, 1992, Defendants filed a Motion for Summary Judgment as to all claims. United States Magistrate Hines entered a report and recommendation on April 27, 1993. The report was adopted by Memorandum Order Overruling Plaintiff's Objections and Adopting the Magistrate Judge's Report and Recommendation entered on August 31, 1993 by this Court. In adopting the recommendations of the Magistrate, summary judgment was granted as to access to the law library and the invasion of privacy issues. Plaintiff's remaining claims are of denial of visitation, denial of religious access, denial of recreation, and denial of due process in administrative segregation. On December 13, 1995, Defendants filed a second Motion for Summary Judgment which is the subject of this opinion.

### Summary Judgment Standards

■ Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–88, 106 S.Ct. 1348, 1355–57, 89 L.Ed.2d 538 (1986). When the nonmoving party has the burden of proof on an issue, the movant must state the basis for the motion and identify those portions of the pleadings, depositions, admissions, answers to interrogatories, together with affidavits, that demonstrate the absence of a genuine issue of material fact.[1] *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53; *Topalian v. Ehrman,* 954 F.2d 1125, 1131–32 (5th Cir.1992), *cert. denied,* 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). A mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden. *See Celotex,* 477 U.S. at 328, 106 S.Ct. at 2555.

■ Once the movant has shown the absence of material factual issues, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson,* 477

---

1. A "material" fact is one that might affect the outcome of the suit under the applicable substantive law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. In order for a dispute to be "genuine," the evidence before the Court must be such that a reasonable jury could return a verdict for the nonmoving party. *Id., see also, Judwin Properties, Inc. v. United States Fire Ins. Co.,* 973 F.2d 432, 435 (5th Cir.1992).

U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456–58, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. However, a party opposing summary judgment may not rest on mere conclusory allegations or denials in his pleadings. Fed. R.Civ.P. 56(e); *see also Topalian*, 954 F.2d at 1131.

### *Analysis*

The Defendants' Motion for Summary Judgment is based on the recent Supreme Court Decision in *Sandin v. Conner*, —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The Motion only concerns the Plaintiff's claim that he was denied due process by being placed in administrative segregation. The record indicates that Poole was placed in segregation based on his prior escape attempts and his continuing plans for escape.

The applicable law concerning the treatment of pretrial detainees and the process due them is *Bell v. Wolfish* and its progeny. 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). However, no argument is made by either side in this regard and the Court will not concoct one. The sole argument presented by the Defendants is that *Sandin* "changed the law on procedural due process" and that Poole no longer has a "protected liberty interest that would enable him to the procedural protection set forth in *Wolff vs. [sic] McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) [sic]." (Defendants' Motion for Summary Judgment, p. 4). This Court will limit its inquiry to the meaning of *Sandin* as it applies to pretrial detainees.

In *Sandin*, an inmate brought a civil rights action against prison officials and the state of Hawaii challenging the imposition of disciplinary segregation for misconduct. In upholding the the actions taken by the officials, the Supreme Court abandoned the methodology employed in *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), and similar cases. However, the Court noted that the "time has come to return to the due process principles we believe were correctly established and applied in *Wolff* and *Meachum* [*v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)] (citations omitted)." *Sandin*, —— U.S. at ——, 115 S.Ct. at 2300. The Justices recognized that the State may create certain liberty interests which are protected by the Due Process Clause. *Id.* In his argument to the Supreme Court, Conner suggested that *any* state action taken for a punitive reason would be an encroachment on a liberty interest, even in the absence of any state regulation. *Id.* Conner seemed to rely on the jurisprudence of cases in which the due process rights of pretrial detainees was at issue. In responding to this claim, the Supreme Court distinguished the analysis in *Sandin* from the principles enunciated in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), and other cases which addressed the interests of pretrial detainees (and schoolchildren) as opposed to convicted prisoners.

Two things are clear about the interpretation of *Sandin*. First, the extent of state action required to create a liberty interest for pretrial detainees will not necessarily create a liberty interest for convicted prisoners. This suggests that the two classes of people are evaluated under differing standards and, therefore, that *Sandin* does not alter the applicable law concerning pretrial detainees. Nothing in the opinion purports to change the law other than for convicted individuals and the movant does not even attempt to make such an argument. *Sandin* held that "Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Sandin*, —— U.S. at ——, 115 S.Ct. at 2301. The reason for the difference in the treatment of the two groups is a simple one—an individual may not be punished prior to a finding of guilt in accordance with due process of law. *Bell*, 441 U.S. at 535, 99 S.Ct. at 1871–72. By contrast, lawful incarceration results in the necessary limitation or revocation of many privileges and rights, "a retraction justified by our penal system." *Sandin*, —— U.S. at ——, 115 S.Ct. at 2301. Disci-

plinary segregation in response to misconduct falls within the bounds of an imposed prison sentence. However, this is the law for those convicted not necessarily for those detained. No argument has been made by either side in this regard.

Second, it is clear from the black letter text of the opinion that the *Wolff* principles were not abandoned, as the Defendants suggest, along with the *Hewitt* methodology. To the extent the Defendants rely on this abandonment (if indeed these are the applicable principles), their claims fail.

To date, the Defendants have provided no summary judgment evidence which would indicate the Plaintiff either received a presegregation hearing or that such a hearing was not necessary under the jurisprudence of this Circuit. Stated succinctly, the opinion relied upon by the the Defendants does not preclude the Plaintiff's procedural due process claim in this case and accordingly, summary judgment is denied.