**Mary Ann CARLO, Plaintiff–Appellant,**

v.

**CITY OF CHINO, et al., Defendants,**

and

**Officer Hector Guerra, Defendant–Appellee.**

No. 95–55798.

United States Court of Appeals, Ninth Circuit.

Argued Oct. 11, 1996.

Decided Jan. 23, 1997.

---

Paula R. Norman, Klass, Helman & Ross, Los Angeles, California, for plaintiff-appellant.

Carol D. Janssen (on the brief), David Lawrence (argued), Franscell, Strickland, Roberts & Lawrence, Pasadena, California, for defendant-appellee.

Before PREGERSON, BOOCHEVER, and REINHARDT, Circuit Judges.

## OPINION

BOOCHEVER, Circuit Judge:

In this 42 U.S.C. § 1983 action, a district court jury found that defendant Officer Hector Guerra violated plaintiff Mary Ann Carlo's civil rights by denying her access to a telephone while she was jailed after her arrest on charges of driving while under the influence of alcohol. The district court overturned the jury verdict as a matter of law, holding that the Constitution does not recognize a right to a post-booking telephone call. Further, the court held that even if such a right does exist, it was not clearly established when Carlo was arrested; and, therefore, Guerra was entitled to qualified immunity. We reverse the district court and reinstate the jury verdict. In so doing, we hold that the state right to a post-booking telephone call creates a liberty interest protected by the Fourteenth Amendment of the United States Constitution, and that due process protections of prisoners' liberty rights were clearly established long before Carlo was arrested in 1991.

## I. FACTUAL AND PROCEDURAL HISTORY

On March 9, 1991, at or about 12 a.m., plaintiff Mary Ann Carlo was arrested for driving while under the influence of alcohol and taken to a jail in San Bernardino County, California, where she was held overnight. Several times during the night Carlo asked to use a telephone. Defendant Hector Guerra, the watch commander at the jail that evening, refused to permit Carlo to place a telephone call. After a shift change in personnel and a trip to the hospital for medical attention to injuries allegedly caused by the arresting officer, Carlo finally was permitted to use a telephone at about 2:00 p.m. the following day.

Carlo filed this section 1983 action alleging that her civil rights were violated when Guerra and the other officials at the jail prevented her from making a phone call. She alleged several other civil rights violations as well, none of which is the subject of this appeal. At trial, a jury found that Guerra had deprived Carlo of a constitutional right by denying her the opportunity to make a telephone call (a right provided for by state law), and it awarded Carlo $1.00 in nominal damages. The district court then granted the defendant's motion for judgment as a matter of law, overturned the jury verdict against Guerra, and denied the plaintiff's request for attorney's fees. Carlo challenges both the judgment as a matter of law on behalf of Guerra and the denial of attorney's fees.

## II. STANDARDS OF REVIEW

Judgment as a matter of law is reviewed de novo. *See Pierce v. Multnomah County*, 76 F.3d 1032, 1037 (9th Cir.1996) (under former term "directed verdict"). In order to avoid injustice, we may consider a legal argument not presented in the district court. *Donovan v. Crisostomo*, 689 F.2d 869, 874 (9th Cir.1982).

We also review the district court's decision on qualified immunity de novo. *Newell v. Sauser*, 79 F.3d 115, 116 (9th Cir. 1996).

## III. VIOLATION OF CARLO'S CONSTITUTIONAL RIGHTS

a. State Right to Make Telephone Calls

California grants arrestees the right to place three telephone calls. Section 851.5 of the California Penal Code provides in whole:

> Right of arrested person to make telephone calls; posting of sign

> (a) Immediately upon being booked, and, except where physically impossible, no later than three hours after arrest, an arrested person has the right to make at least three completed telephone calls, as described in subdivision (b).

> The arrested person shall be entitled to make at least three such calls at no expense if the calls are completed to telephone numbers within the local calling area.

> (b) At any police facility or place where an arrestee is detained, a sign containing the following information in bold block type shall be posted in a conspicuous place:

> That the arrestee has the right to free telephone calls within the local dialing

area, or at [her] own expense if outside the local area, to three of the following:

    (1) An attorney of [her] choice or, if [she] has no funds, the public defender or other attorney assigned by the court to assist indigents, whose telephone number shall be posted. This phone call shall not be monitored, eavesdropped upon, or recorded.

    (2) A bail bondsman.

    (3) A relative or other person.

(c) These telephone calls shall be given immediately upon request, or as soon as practicable.

(d) This provision shall not abrogate a law enforcement officer's duty to advise a suspect of [her] right to counsel or of any other right.

(e) Any public officer or employee who willfully deprives an arrested person of any right granted by this section is guilty of a misdemeanor.

Cal.Penal Code § 851.5 (1985). This section clearly establishes Carlo's right to place telephone calls under state law. The jury found that by violating the statute, Officer Guerra violated her constitutional rights. While the right to use a telephone may not per se rise to the level of a liberty interest protected by the procedural mandate of the Fourteenth Amendment, the right of an arrestee not to be held incommunicado involves a substantial liberty interest.

### b. Substantive and Procedural Due Process

■ At trial, Carlo contended that the Due Process Clause contained a substantive due process right to a telephone call. The district court disagreed. Despite the district court's reliance on *substantive* due process analysis, we may consider a legal argument not presented in the district court to avoid injustice and where public policy so requires. This is especially true here, where despite arguing that a substantive due process right existed, Carlo in fact relied substantially on *procedural* due process cases. *Donovan*, 689 F.2d at 873 ("Except in the case of jurisdictional questions or when particular circumstances indicate that injustice might otherwise result or where public policy requires,

this Court declines to consider arguments for reversal not presented to the district court") (quotation omitted); *see also Gobel v. Maricopa County*, 867 F.2d 1201, 1203 (9th Cir. 1989) ("We liberally construe civil rights complaints.")

■ The judge's decision to reverse as a matter of law was based on her determination that there was no violation of Carlo's substantive constitutional rights under the Fourteenth Amendment to the United States Constitution. Although the Constitution provides an arrestee with an independent right under the Fourteenth Amendment to communicate with the outside world, *see Procunier v. Martinez*, 416 U.S. 396, 418–419, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974), *Feeley v. Sampson*, 570 F.2d 364, 373 (1st Cir. 1978), the arguments of the parties primarily concerned the question of whether the California statute created a constitutionally protected liberty interest. Therefore, we think it appropriate to consider initially the question whether the California statute gives rise to a constitutionally protected liberty interest. Moreover, in view of the conclusion we ultimately reach, we need only confirm the existence of the federal right, and need not define its precise contours here.

Further, Carlo did not claim a violation of First Amendment rights. In *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986), and *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir.1996), although finding no such right was violated, we acknowledged the existence of a First Amendment right to telephone access subject to reasonable security limitations. While we are free to consider whether Guerra's conduct here rose to the level of a First Amendment violation despite Carlo's failure to raise the issue below, *see Donovan*, 689 F.2d at 873, we need not do so because our holding on procedural due process grounds gives her the relief she seeks.

### c. Liberty Interest Protected by Procedural Due Process

Section 1983 of title 42 of the United States Code provides in part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ...

subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...." 42 U.S.C. § 1983. Thus to impose liability under that section, the plaintiff must prove a violation of a federal statute or the United States Constitution. Because she does not contend that Guerra violated a federal statute, Carlo relies on the provision of the Fourteenth Amendment to the United States Constitution that provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

Moreover, Carlo does not argue that the process provided by the California statute is inadequate. She argues instead that Guerra and the other officers in the jail that night provided inadequate process by violating the statute. It is clear that once a liberty interest has been found, federal law rather than state law dictates how much process is due. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1492–93, 84 L.Ed.2d 494 (1985). Without deciding in this case the minimum procedure required by the federal Constitution, however, we hold that the process provided by the California statute (requiring notice of the right to telephone calls and permitting denial of a requested immediate phone call only in the case of physical impossibility) is sufficient to satisfy constitutional due process. The question we address here is whether by violating the state statute Guerra also violated a federal constitutional right.

The Supreme Court has "repeatedly held that state statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment." *Vitek v. Jones,* 445 U.S. 480, 488, 100 S.Ct. 1254, 1261, 63 L.Ed.2d 552 (1980). We hold that the California statute creates such a liberty interest.

Traditionally, the Due Process Clause has been particularly protective of the minimal liberty interests granted to prisoners. *Cf. Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979) ("pretrial detainees, who have not been convicted of any crimes, retain at least those constitution-al rights that we have held are enjoyed by convicted prisoners"). In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), a prison inmate argued that Nebraska had granted him a liberty interest in good-time credits that by statute could not be taken away except in specific instances. The Supreme Court agreed.

It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff,* 418 U.S. at 557, 94 S.Ct. at 2975 (internal citation omitted).

After *Wolff,* a number of cases were handed down in which courts explained which state statutes and regulations granted protected liberty interests to prisoners. Picking up on the quoted passage from *Wolff,* courts began asking whether the state entitlement uses mandatory language and whether the entitlement cannot be eviscerated absent meeting specific substantive preconditions. *Hewitt v. Helms,* 459 U.S. 460, 471–72, 103 S.Ct. 864, 871–72, 74 L.Ed.2d 675 (1983). In *Helms,* a prisoner contended that Pennsylvania statutes created a liberty interest in being housed with the general prison population rather than in administrative segregation. According to the statutes, an inmate could be moved to administrative

segregation if he or she engaged in serious misconduct and prison officials determined a "need for control" or "the threat of a serious disturbance." *Id.* at 472, 103 S.Ct. at 871. While the Court noted that the adoption of procedural guidelines alone would not implicate the Fourteenth Amendment, it held that "the repeated use of explicitly mandatory language in connection with requiring" that specific preconditions be met before removing a prisoner from the general population "demands a conclusion that the State has created a protected liberty interest." *Id.* at 472, 103 S.Ct. at 871. *See Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 462, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989) (" 'a State creates a protected liberty interest by placing substantive limitations on official discretion' ") (quoting *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747–48, 75 L.Ed.2d 813 (1983)). Similarly, by placing substantive limitations on official discretion pertaining to telephone calls, California has created a protected liberty interest in an arrestee's right to communicate.

The Ninth Circuit has likewise used the mandatory language test to determine that state statutes or regulations have created a liberty interest within the meaning of the Fourteenth Amendment. In *Mendoza v. Blodgett,* this court held that a state regulation that provided that a prisoner can "be placed upon Feces Watch only upon determination that there is reasonable suspicion that [the prisoner] is currently secreting contraband" created a liberty interest within the meaning of the Fourteenth Amendment. 960 F.2d 1425, 1429 (9th Cir.1992) (as amended) (internal citation omitted), *cert. denied,* 506 U.S. 1071, 113 S.Ct. 1027, 122 L.Ed.2d 173 (1993). The regulation defined reasonable suspicion and detailed the permissible duration of the watch. *Id.* In finding a state-defined protected liberty interest, the court noted that the regulation contained particularized standards and criteria, and used "ex-

plicitly mandatory" language. *Id. See also Allen v. Board of Pardons,* 792 F.2d 1404, 1408 (9th Cir.1986) (finding that Montana statute created liberty interest in parole), *aff'd,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1986); *McFarland v. Cassady,* 779 F.2d 1426, 1428 (9th Cir.1986) (holding that Arizona statute created liberty interest in good-time credits).

Recently in *Sandin v. Conner,* the Supreme Court again reached the question of how to determine whether a state statute grants prisoners a liberty interest recognized by the Due Process Clause. — U.S. —, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). That case, like *Helms,* involved disciplinary segregation for misconduct. The prisoner claimed that Hawaii prison regulations created a liberty interest in remaining free from disciplinary segregation, but the Court disagreed. In arriving at this conclusion, the Court applied a new test to decide when a state-created right is a Fourteenth Amendment liberty interest: "[T]hese interests will be generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." — U.S. at —, 115 S.Ct. at 2300. It urged a "return to the due process principles we believe were correctly established and applied in *Wolff.*" *Id.*

Whether *Sandin* applies in this case, however, is unclear. *Sandin* arose in the context of disciplinary segregation of a convicted prisoner, and explicitly criticized the *Helms* test for its undesirable effects on prison management. *Id.* at —, 115 S.Ct. at 2299 (noting that *Helms* creates disincentives for states to codify prison management and that it leads to micromanagement of prisons by federal courts). Therefore, the *Sandin* test appears to apply specifically to prisoners who have been convicted. *See Mitchell v. Dupnik,* 75 F.3d 517, 524 (9th Cir.1996) ("*Sandin* ... recognizes that its rationale regarding incarcerated prisoners is not applicable to pretrial detainees.")[1] A majority of the

---

1. In *Mitchell,* a pretrial detainee claimed several due process violations. First, he claimed that a prison regulation created a liberty interest in being present during a search of his legal papers. To decide whether the regulation created a Fourteenth Amendment liberty interest this court applied the *Sandin* test. Although *Sandin* "refers to the ordinary incidents of imprisonment under a sentence after conviction," a cell search is a "general security measure of the kind that the Supreme Court has said pretrial detainees may be subjected." Thus we concluded that for the

courts that have addressed this question have held that *Sandin* does not govern the assessment of state-created liberty interests for pretrial detainees. *See Whitford v. Boglino,* 63 F.3d 527, 531 n. 4 (7th Cir.1995) (holding that. *Sandin* does not apply to pretrial detainees); *Brims v. Tracy,* 1996 WL 153696 at *3 (S.D.N.Y. April 3, 1996) (same); *Poole v. Jefferson County Sheriff's Dept.,* 921 F.Supp. 431, 433 (E.D.Tex.1996) (same); *Oliver v. Hinton,* 1996 WL 99901 (N.D.Ill., Feb.27, 1996) (same); *Butler v. New York State Correctional Dept.,* 1996 WL 438128 (S.D.N.Y., Aug. 2, 1996) (same). *Sandin* also points out that many of the regulations that courts determined had created liberty interests under *Helms* were not originally intended to confer rights on inmates. *Id.* In this case, the California statute clearly and explicitly confers a right on arrestees. Cal.Penal Code § 851.5(a) ("an arrested person has the right to make at least three telephone calls"). *See also Ellis v. District of Columbia,* 84 F.3d 1413, 1418 (D.C.Cir.1996) (*Sandin* "relates to claims dealing with the day-to-day management of prisons").

While *Sandin* abandoned the reasoning in *Helms,* at least as to convicted prisoners, it explicitly did not overrule *Helms. Sandin,* — U.S. at — n. 5, 115 S.Ct. at 2300 n. 5. According to the rule in *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989), where a Supreme Court precedent "has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls," leaving to the Supreme Court "the prerogative of overruling its own decisions." *Id.* at 484, 109 S.Ct. at 1922. Under that rule *Helms·* may

continue to apply outside the context of convicted prisoners.

We believe that under either standard the California statute creates a protected liberty interest. Under *Helms,* the statute substantively limits an officer's discretion because it makes a telephone call mandatory unless physically impossible. Cal.Penal Code § 851.5(a).

The *Sandin* test also results in finding a protected liberty interest. In the context of an arrestee, the *Sandin* standard can be restated as recognizing liberty interests in state laws where they grant "freedom from restraint which . . . imposes atypical and significant hardship on the [arrestee] in relation to the ordinary incidents of [being held following an arrest]." — U.S. at —, 115 S.Ct. at 2300. The holding of an arrestee incommunicado without just cause is atypical of post-arrest detention and is a restraint that imposes "significant hardship."

■ Whether a restraint is "atypical" under *Sandin* is not a purely empirical question, but rather one of the measure of a restraint in relation to an inmate's limited liberty rights. Under *Bell v. Wolfish,* a pretrial detainee may not be "punished." 441 U.S. at 536–37, 99 S.Ct. at 1872–73. There is an important distinction between the status of an arrestee and a pretrial detainee. An arrestee has not yet undergone the judicial determination of probable cause that has been applied to the pretrial detainee. An arrestee, thus, "is entitled *at least* to the protections afforded pretrial detainees." *Hallstrom v. City of Garden City,* 991 F.2d 1473, 1485 (9th Cir.1993), *cert. denied,* 510 U.S. 991, 114 S.Ct. 549, 126 L.Ed.2d 450

purposes of a cell search, the plaintiff was more like a convicted prisoner than a pretrial detainee. *Id.* at 523. The plaintiff also contended that his liberty interest in being free from disciplinary segregation was denied without due process of law. While *Sandin* held that "an incarcerated prisoner had no liberty interest in being free from segregated confinement imposed as a disciplinary measure," "its rationale regarding incarcerated prisoners is not applicable to pretrial detainees. *Sandin* leaves *Bell v. Wolfish* untouched." *Id.* at 523–24, 99 S.Ct. at 1865–66. Under *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), a pretrial detainee

does have an interest, grounded directly in the federal Constitution, in not being punished without a due process hearing. *Id.* at 524, 99 S.Ct. at 1866.

Thus, *Mitchell* holds that pretrial detainees' liberty interests arising directly out of the Constitution are governed by *Bell v. Wolfish.* It further holds that in some pretrial detainee cases *Sandin* will apply to determine whether a state law creates a liberty interest protected by the Fourteenth Amendment. *Mitchell* leaves unanswered the question, however, of what test to apply in the remainder of the pretrial-detainee, state-created right cases.

(1993). The central purpose of detention at this stage is to ensure that a defendant will appear at trial. *Id.* Prohibiting an arrestee from making a telephone call in no way furthers this purpose. Accordingly, we conclude that holding an arrestee incommunicado is a restraint atypical of post-arrest detention.

In addition to imposing an atypical restraint, the inability to use a telephone shortly after being booked amounts to a "significant hardship." First, a telephone call allows an arrestee to contact an attorney almost immediately. This often will be of paramount importance in marshalling evidence in defense of the charged offense. In this case, Carlo was arrested for driving while under the influence of alcohol. Evidence (in the form of her blood alcohol content) of whether or not she had committed the crime of which she was accused dissipated as the hours wore on, and "[b]y denying [her] access to a telephone ... after her arrest for DUI, the State denied her the means by which she could establish her defense." *State v. Carr,* 128 Idaho 181, 911 P.2d 774, 777 (Ct.App.1995). Further, a telephone call would have permitted Carlo to contact a family member or some other person who may have enabled her to post bail. Again, this was particularly significant in Carlo's case because she had suffered injuries and wished to seek medical attention that the jail did not provide for her until later the next day.

While these examples are not an exhaustive recital of the important benefits of a post-booking telephone call and the hardship created by its denial, they demonstrate that the right granted by the California statute is one of "real substance" and merits constitutional due process protections. *Wolff,* 418 U.S. at 557, 94 S.Ct. at 2975 (state-created right of "real substance" entitled to due process protections). We hold that by violating the California statute Guerra violated Carlo's constitutional rights.

## IV. GUERRA'S QUALIFIED IMMUNITY

■ Guerra argues that even if he violated Carlo's civil rights, his qualified immunity prevents liability for that violation. After de novo review of the doctrine of qualified immunity as it applies to this case, we disagree.

■■ In order to hurdle a defendant's claim of qualified immunity, a plaintiff must satisfy a two-part test. First, the alleged violation must be of a right that is clearly established. *Alexander v. County of Los Angeles,* 64 F.3d 1315, 1319 (9th Cir.1995). "'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). Second, the defendant must show that "a reasonable ... officer could have believed, in light of the settled law, that he was not violating a constitutional or statutory right." *Gasho v. United States,* 39 F.3d 1420, 1438 (9th Cir. 1994), *cert. denied,* — U.S. —, 115 S.Ct. 2582, 132 L.Ed.2d 831 (1995).

Qualified immunity creates a "balance ... between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties" by making it possible "for officials reasonably [to] anticipate when their conduct may give rise to liability for damages.... It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 639–40, 107 S.Ct. at 3039 (internal quotations omitted). This balancing test permits officials to exercise the discretion asked of them without the fear of liability to circumscribe their decision-making. That discretion is bounded, however, and thus officials are expected to act in accordance with "clearly established" law. In this case, Guerra cannot argue that he did not know that denying Carlo a telephone call was illegal. A California statute clearly provided that he should have permitted her up to three phone calls immediately upon being booked or at least within three hours thereof. Cal.Penal Code § 851.5(a), (c).

It is not enough to say simply that the right was clearly established by the California statute. The statute is relevant, however, in determining whether Carlo's constitutional right was clearly established.

*Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984), held that officials sued for violations of constitutional rights "do not forfeit their immunity by violating some *other* statute or regulation." *Id.* at 194 n. 12, 104 S.Ct. at 3019 n. 12 (emphasis in original). *See Elder v. Holloway,* 510 U.S. 510, 515–16, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994) (describing *Davis* as holding that "the clearly established right [must] be the federal right on which the claim for relief is based").

Davis was careful to point out, however, that in that case there was "no claim that the ... violation of the state regulation either [was] itself actionable under § 1983 or bears upon the claim of constitutional right that appellee asserts under § 1983." *Id.* at 193, 104 S.Ct. at 3018. It goes on to state that "[n]either federal nor state officials lose their immunity by violating the clear command of a statute or regulation—of federal or of state law—*unless that statute or regulation provides the basis for the cause of action sued upon.*" *Id.* at 194 n. 12, 104 S.Ct. at 3019 n. 12 (emphasis added). "State law may bear upon a claim under the Due Process Clause when the ... interests protected by the Fourteenth Amendment are created by state law." *Id.* at 193 n. 11, 104 S.Ct. at 3018 n. 11. Here, the California statute was the basis for Carlo's claim and thus bears on whether the federal right (procedural protection of the state-defined constitutional liberty right) was clearly established.

The existence of due process protection for state-created liberty interests for prisoners has been clearly established at least since 1974. That year *Wolff* held that where a state-created right has "real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' " it is entitled "to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." 418 U.S. at 557, 94 S.Ct. at 2975. Cases following *Wolff* defined which state rights are protected liberty interests and which are not. *See, e.g., supra Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). The clearly established test at the time of Carlo's arrest in 1991 asked whether the provision granting a right was framed in mandatory or discretionary language and whether it placed substantive limitations on an officer's discretion.[2] *Helms,* 459 U.S. at 463, 103 S.Ct. at 867; *Gotcher v. Wood,* 66 F.3d 1097, 1099 (9th Cir.1995). State statutes that did circumscribe discretion with substantive limits and mandatory language created protected liberty interests. *Kentucky Dep't of Corrections,* 490 U.S. at 462, 109 S.Ct. at 1909–10. *See McFarland,* 779 F.2d at 1428 (applying *Helms* test to find state statute created liberty interest in receipt of good-time credits); *Sourbeer v. Robinson,* 791 F.2d 1094, 1100–01 (3rd Cir.1986) (applying *Helms* test to find state statute created liberty interest in remaining housed with the general prison population), *cert. denied,* 483 U.S. 1032, 107 S.Ct. 3276, 97 L.Ed.2d 779 (1987); *Maldonado Santiago v. Velazquez Garcia,* 821 F.2d 822, 827 (1st Cir.1987) (applying *Helms* standard to find Puerto Rico rule governing emergency segregation and transfer among prisons creates a liberty interest); *Taylor By and Through Walker v. Ledbetter,* 818 F.2d 791, 798–99 (11th Cir.1987) (applying *Helms*-like test to find a state-created liberty interest in social worker supervision of children in foster homes), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989); *Long v. Norris,* 929 F.2d 1111, 1116–17 (6th Cir.1991) (applying *Helms* test to find state-created liberty interest in prison visitation rights), *cert. denied,* 502 U.S. 863, 112 S.Ct. 187, 116 L.Ed.2d 148 (1991).

**2.** Although *Sandin* has articulated a new test, at least for convicted prisoners, for determining when a state statute creates an interest protected by the Fourteenth Amendment, *Sandin* did not address the question of qualified immunity.

Qualified immunity asks what law was clearly established at the time the alleged violation occurred. In 1991, the *Helms* test was the clearly established law.

The California statute at issue drastically limits an officer's discretion. It requires that an arrestee be permitted to make three telephone calls. Its mandatory language entitles an arrestee to phone calls "immediately upon being booked" or "no later than three hours after arrest," providing exceptions only for physical impossibility. Cal.Penal Code § 851.5(a), (c). Moreover, it holds criminally liable an officer who "willfully deprives an arrested person" of this right. Cal.Penal Code § 851.5(e). As required by the test applied in 1991, the statute uses mandatory language to bind an officer's discretion regarding whether to permit an arrestee to use a telephone. Under *Helms,* it was clearly established that the California statute created a liberty interest.

Two other circuits have addressed this qualified immunity question. The Sixth Circuit in 1985 interpreted *Davis v. Scherer* in a case involving a prisoner's state-created right to possess books not threatening to the security of the prison. The court held that a violation of a state statute "is sufficient to cause officials to forfeit their qualified immunity" when the statute "provides the basis for the cause of action sued upon." *Spruytte v. Walters,* 753 F.2d 498, 510–11 (6th Cir.1985) (internal citation omitted), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 788, 88 L.Ed.2d 767 (1986). More recently in the Seventh Circuit, an inmate charged that prison officials violated the Fourteenth Amendment by depriving him of a state-created liberty interest without due process of law. The prisoner claimed the deprivation of a right to a haircut. The appellate court remanded to determine whether the prison regulation created a protected liberty interest under *Sandin,* but held there was no right to qualified immunity because it was established that state laws creating a liberty interest are protected by the federal Constitution. We agree with the Seventh Circuit's holding that "[t]here is no novelty to this claim ... and therefore no basis for a defense of immunity." *Anderson v. Romero,* 72 F.3d 518, 527 (7th Cir.1995).

Given the clarity of the statute and the law defining liberty interests at the time, no reasonable officer could have believed that denying Carlo telephone calls did not violate her constitutional rights.

## V. ATTORNEY'S FEES

■ Carlo is the prevailing party and as such is entitled to attorney's fees under 42 U.S.C. § 1988. *Farrar v. Hobby,* 506 U.S. 103, 113, 113 S.Ct. 566, 574, 121 L.Ed.2d 494 (1992) (a plaintiff who obtains even a nominal damage award is a prevailing party under section 1988). On remand, the district court should consider the principles set forth by this court in *Morales v. City of San Rafael,* 96 F.3d 359, 364–65 (9th Cir.1996) to determine the appropriate sum of attorney's fees, including fees incurred on appeal.

## VI. CONCLUSION

The right to a telephone call, as detailed in California Penal Code § 851.5, constitutes a liberty interest recognized by the due process clause of the Fourteenth Amendment. The constitutional protections of such a liberty interest were clearly established at the time Guerra denied Carlo the right to place telephone calls. Therefore we reverse the district court's judgment as a matter of law and reinstate the jury verdict. We further remand to the district court to determine appropriate attorney's fees, including fees incurred upon appeal.

REVERSED and REMANDED.