Dennis Lee CAMPBELL,
Plaintiff–Appellant,

v.

Paul BURT, Defendant–Appellee,

and

John Doe (3), Police Officers, Defendants.

No. 96–16385.

United States Court of Appeals,
Ninth Circuit.

Submitted March 9, 1998 *.

Decided April 6, 1998.

---

* This panel unanimously agrees that this case is appropriate for submission without oral argu-
ment. Fed. R.App. P. 34(a); 9th Cir. R. 34–4.

Dennis L. Campbell, Pro per, Plaintiff–Appellant.

Colleen L. Chun, Deputy Attorney General, Honolulu, HI, for Defendants–Appellee.

Before: WOOD,** HALL and O'SCANNLAIN, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Appellant Dennis Lee Campbell brought a 42 U.S.C. § 1983 action against Child Protective Service ("CPS") caseworker Paul Burt.

Campbell alleged that Burt violated his federal constitutional rights by taking emergency custody of his three minor children and failing to file a court petition within two days of taking custody. The district court, following a bench trial, dismissed Campbell's lawsuit. *See Campbell v. Burt,* 949 F.Supp. 1461 (D.Hawai'i 1996). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

### I·

Burt took emergency custody of Campbell's children after discovering the squalid conditions in which they lived. Their "home" was a storage shed measuring 6 feet by 12 feet that had no running water, refrigerator, toilet, or cooking facilities.

There were also indications that the children had been physically neglected and that Campbell and Theresa Rossi, the children's mother, had been in trouble with the law. Rossi twice had been arrested for driving under the influence of alcohol with the children in the car, and Campbell had a firearms conviction in his record. Campbell, who had mere visitation rights with respect to the children, was living in the shed while awaiting trial on charges of physically abusing one of the children. He was also awaiting trial on charges of abusing Rossi, whom he doused with gasoline, and on charges of criminal property damage because the gasoline ignited and burned down the house where the children previously had been living. Campbell was later convicted on all charges.

In light of these circumstances, the district court found it reasonable for Burt to take emergency physical custody of the children without a prior court order. However, Hawaii Revised Statutes ("H.R.S.") §§ 587–24 and 587–21 required Burt to file a petition for temporary custody within two working days of taking emergency physical custody over· a child without a prior court order. Burt did not file the petition until seven days after taking custody. On the same day Burt filed the petition, the Family Court issued an Ex Parte Order for Temporary Foster Cus-

** The Honorable Harlington Wood, Jr., Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

tody, granting the state continued custody over the children.

The primary issue before us is whether, for purposes of qualified immunity, the seven-day delay before filing the petition and obtaining post-deprivation judicial review violated Campbell's clearly established procedural due process rights under the United States Constitution.

## II

■ Federal procedural due process guarantees prompt post-deprivation judicial review in child custody cases. *See Jordan by Jordan v. Jackson*, 15 F.3d 333, 343 (4th Cir.1994) (citations omitted) (holding that "it is well settled that the requirements of process may be delayed where emergency action is necessary to avert imminent harm to a child, provided that adequate post-deprivation process to ratify the emergency action is promptly accorded"); *Caldwell v. LeFaver*, 928 F.2d 331, 334 (9th Cir.1991) (noting that "[t]here are some decisions recognizing that a parent may have a cognizable due process right to a post-deprivation hearing when the state removes a child from the parent's custody on an emergency basis and places the child with an individual who does not enjoy legal custody"); *Morrison v. Jones*, 607 F.2d 1269, 1276 (9th Cir.1979) (finding dismissal of a procedural due process claim improper where the mother alleged that the state sent her child out of the country without an adequate post-deprivation hearing).

■ However, "[a]n official is entitled to qualified immunity if the right which he allegedly violated is not 'clearly established.'" *Campbell*, 949 F.Supp. at 1468 (*quoting Anderson v. Creighton*, 483 U.S. 635, 639–41, 107 S.Ct. 3034, 3038–40, 97 L.Ed.2d 523 (1987)). In order to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Id.* Rather, the unlawfulness of the conduct need only

have been apparent in light of preexisting law. *Id.*

■ Federal case law as of April 1993 (when the children were removed) did not clearly establish that a seven-day delay before obtaining post-deprivation judicial review would violate due process. The relevant case law clearly established constitutional violations only for much longer delays. *See Weller v. Dept. of Social Services*, 901 F.2d 387, 396 (4th Cir.1990) (noting that "an utter lack of judicial action ratifying the deprivation of custody for four months is clearly not the prompt due process that the Constitution requires"); *Duchesne v. Sugarman*, 566 F.2d 817, 826 (2nd Cir.1977) (holding that a 36–month delay violated due process). Only *Jordan*, which was decided in 1994, may be said to establish that a relatively short delay (of 65 hours) "is near, if not at, the outer limit of permissible delay between a child's removal from his home and judicial review." 15 F.3d at 351.

Additionally, in all the cases establishing due process violations for removing children from parental custody, the parent actually had legal custody over the children. Here, Rossi, not Campbell, had sole legal custody over the children. This circuit has distinguished, for purposes of whether a post-deprivation hearing was a clearly established due process right, between whether children were *placed* with a person who lacked legal custody or with a person such as a parent who had legal custody. *See Caldwell*, 928 F.2d at 334. Similarly, the cases where children were *taken* from a person who had legal custody is distinguishable from the present case, where Campbell did not have legal custody. As the district court held, "it was also not clearly established whether taking emergency custody would violate the constitutional rights of a parent such as Plaintiff who had mere visitation rights rather than full legal custody of his children." *Campbell*, 949 F.Supp. at 1469.

## III

■ While Burt's delay in obtaining post-deprivation judicial review did not violate clearly established federal law, his seven-day

delay in filing a court petition did violate state law, which required him to file the petition within two days. *See* H.R.S. §§ 587–24 and 587–21. The remaining issue is thus whether this state law clearly established a liberty interest protected by the Due Process Clause of the United States Constitution.

■ As a general rule, a violation of state law does not lead to liability under § 1983. *See Davis v. Scherer,* 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision."); *Doe v. Connecticut Dept. of Child & Youth Services,* 911 F.2d 868, 869 (2nd Cir.1990) ("A violation of state law neither gives plaintiffs a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim.") (citations and internal brackets omitted).

■ The Supreme Court has recognized, however, that state law may form the basis for a federal action for purposes of qualified immunity in some cases: "Neither federal nor state officials lose their immunity by violating the clear command of a statute or regulation-of federal or of state law-unless that statute or regulation provides the basis for the cause of action sued upon." *Davis,* 468 U.S. at 194 n. 12, 104 S.Ct. at 3019 n. 12. One example where state law forms the basis for a federal action is the law of property: "State law may bear upon a claim under the Due Process Clause when the property interests protected by the Fourteenth Amendment are created by state law." *Id.* at 193, 104 S.Ct. at 3019. This concept has been expanded in the context of prisoners' rights. As of 1993, the Supreme Court had acknowledged that "a State creates a protected liber-

ty interest by placing substantive limitations on official discretion" through state law or regulation. *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). This circuit has relied on *Olim* to hold that a California statute that permits prisoners to make three telephone calls immediately after arrest clearly establishes a liberty interest in order to defeat a claim of qualified immunity: "no reasonable officer could have believed that denying [plaintiff] telephone calls did not violate her constitutional rights." *Carlo v. City of Chino,* 105 F.3d 493, 502 (9th Cir.1997), *cert. denied,* — U.S. ——, 118 S.Ct. 1336, 140 L.Ed.2d 496 (1998). The court in *Carlo* reasoned that the state had created a protected liberty interest because the state law was mandatory. *Id.* at 499.

In the present case, Hawaii law is both mandatory and clear. There is no dispute that Burt had to file a petition within two days of taking custody of the children, and that when he failed to do so, he violated state law.

Nonetheless, we hold that the state law in this case did not clearly establish a federal right at the time Burt removed the children. Both *Carlo* and *Olim* dealt with state laws governing prisoners' rights, not the rights of parents of children taken into emergency custody.[1] In fact, as one court has noted, the "[e]stablishment of a liberty interest on the basis of state law, even when the doctrine was most in favor, was largely limited to state law regarding conditions of confinement in prisons and other institutions." *Dietz v. Damas,* 932 F.Supp. 431, 453 (E.D.N.Y. 1996).[2] The Supreme Court has recently limited the doctrine to a certain core of prisoners' rights. *See Sandin v. Conner,* 515 U.S. 472, 483–84, 115 S.Ct. 2293, 2300, 132

---

1. Moreover, *Carlo* was decided in 1997, long after the events at issue here. Thus, any rule of law that *Carlo* might have established was not clearly established during the relevant time. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) ("If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful").

2. While one case cited in *Carlo* found a state-created liberty interest in social worker supervision of children in foster homes, this was a substantive due process right to be free from the infliction of unnecessary pain, not a procedural due process right like the one at issue here. *See Taylor by and Through Walker v. Ledbetter,* 818 F.2d 791, 794 (11th Cir.1987).

L.Ed.2d 418 (1995) (citation omitted) ("[W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.... But these interests will be generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.").

Thus, Burt cannot reasonably have been expected to know that a doctrine largely confined to prison regulations, which had never before been applied to creating federal liberty interests in statutes like H.R.S. §§ 587–24 and 587–21, would cause his actions to violate Campbell's federal constitutional rights. This is especially true given the fact, as discussed above, that federal case law had not clearly established that a seven-day delay in seeking judicial review was unconstitutional.

## IV

■ Campbell also appeals various other rulings of the district court. We hold that the district court did not abuse its discretion by denying Campbell's motions for the appointment of counsel. *See Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir.1981) (holding that there is no constitutional right to appointed counsel for § 1983 claims). We also hold that the district court did not abuse its discretion by denying Campbell's motions for the joinder of his minor children and Rossi as plaintiffs in his pro se lawsuit. *See Kescoli v. Babbitt*, 101 F.3d 1304, 1309 (9th Cir.1996) (holding that joinder is reviewed for abuse of discretion). Neither Campbell's children nor Rossi indicated a desire to join the lawsuit, and Campbell may not represent their interests in court. *See Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997) (holding that a parent cannot bring an action on behalf of minor children without retaining a lawyer); *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir.1987) (holding that while a nonattorney may represent himself, he has no authority to appear as an attorney for others).

The district court also did not err by dismissing Campbell's remaining state law claims, which were subject to qualified immunity. All other issues raised by Campbell were waived because they were not raised before the district court. *See Int'l Union Bricklayers v. Jaska*, 752 F.2d 1401, 1404 (9th Cir.1985) (holding that the appeals court will not review an issue not raised below unless necessary to prevent manifest injustice).

## V

The judgment of the district court is affirmed. Neither the seven-day delay before obtaining post-deprivation judicial review, nor the seven-day delay before filing a court petition, violated Campbell's federal due process rights.

AFFIRMED.