David GALLAGHER; et al., Plaintiffs—Appellants,

v.

CITY OF WINLOCK WASHINGTON; et al., Defendants—Appellees.

No. 06–35197.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 15, 2007.

Filed July 16, 2008.

As Amended on Denial of Rehearing Aug. 18, 2008.

ed by 9th Cir. R. 36–3.

Thomas Charles Althauser, Olson Althauser Lawler & Samuelson, Centralia, WA, Timothy K. Ford, Cristobal Joshua Alex, MacDonald Hoague & Bayless, Seattle, WA, for Plaintiffs–Appellants.

John Thomas Kugler, Burgess Fitzer, PS, Tacoma, WA, Robert L. Christie, Christie Law Group PLLC, Seattle, WA, Michael Barry Tierney, John M. Stellwagen, for Defendants–Appellees.

Before: CUDAHY,* REINHARDT and PAEZ, Circuit Judges.

## MEMORANDUM **

Plaintiffs appeal from the district court's grant of summary judgment in favor of defendants ("defendants" or "officers") on the ground of qualified immunity. Our review is de novo, *Bibeau v. Pac. Nw. Research Found. Inc.*, 188 F.3d 1105, 1113 (9th Cir.1999), and we affirm in part, reverse in part, and remand for further proceedings.[1]

### I. Qualified immunity

Under *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), we must first determine, as to each claim, "whether the facts, taken in the light most favorable to the plaintiff, show the officer's conduct violated a constitutional right."[2] *Stevens v. Rose*, 298 F.3d 880, 883 (9th Cir.2002) (internal quotation marks omitted). "Second, if the officers violated a constitutional right, we inquire whether

---

* The Honorable Richard D. Cudahy, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. We have jurisdiction under 28 U.S.C. § 1291.

2. Instead of applying this summary judgment rule, the district court resolved several material factual disputes in favor of the officers. "[On] appeal, we view the facts, as the district court should have but did not, in the light most favorable to [plaintiffs] and accept [their] version of all material disputed facts." *LaLonde v. County of Riverside*, 204 F.3d 947, 953–54 (9th Cir.2000).

that right was 'clearly established' when viewed in the context of the case." *Ganwich v. Knapp*, 319 F.3d 1115, 1119 (9th Cir.2003). We review each of the plaintiffs' claims in turn.

## A. Fourth Amendment claims

### 1. Warrantless entry

There is no dispute that the police here lacked a warrant. The officers,[3] however, contend that their warrantless entry was justified by one of two exceptions to the normal requirement of probable cause and a warrant: (1) "probable cause plus exigent circumstances," *Kirk v. Louisiana*, 536 U.S. 635, 638, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002) (per curiam); or (2) consent, *see Georgia v. Randolph*, 547 U.S. 103, 109, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006). The district court held that the officers did not violate plaintiffs' constitutional rights because the warrantless entry was justified under both exceptions. Viewing the evidence in the light most favorable to plaintiffs, we disagree.

### a. Probable cause

Probable cause exists where an officer possesses "knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir.2007), *cert. denied*, — U.S. —, 128 S.Ct. 335, 169 L.Ed.2d 235 (2007). Probable cause must be determined based on "the totality of the circumstances known to the officers at the time," *United States v. Alaimalo*, 313 F.3d 1188, 1193 (9th Cir.2002) (internal quotation marks omitted), and is to be determined on a purely objective basis. *Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004).

 The officers contend that their warrantless entry was justified by probable cause to believe the plaintiffs were guilty of either (1) residential burglary (the crime for which the plaintiffs actually were arrested) or (2) minor-in-possession of alcohol. Minor-in-possession can quickly be eliminated as a candidate. The officers state that when they "opened the door, a large quantity of alcohol was in plain view." However, taking the plaintiffs' evidence as true, as we must, any beer cans were hidden away in the kitchen, not in "plain view" from the doorway entering the living room. Moreover, the warrantless entry itself was accomplished by the *officers forcing open* the door. Anything the police saw after that point is thus irrelevant to probable cause to *enter*. *See Alaimalo*, 313 F.3d at 1193. Finally, the need to preserve evidence of misdemeanor minor-in-possession could not have justified the warrantless entry in any event. *See Brigham City, Utah v. Stuart*, 547 U.S. 398, 405, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) (citing *Welsh v. Wisconsin*, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984)).

 Based on the summary judgment record, the officers also lacked probable cause to believe that the plaintiffs were committing residential burglary. Proof of residential burglary in Washington involves "two elements: (1) that [the suspect] entered or remained unlawfully in a dwelling, and (2) that he intended to commit a crime against a person or property

---

**3.** The Winlock and Toledo defendants filed a joint brief, while the Napavine and Vader defendants filed separate briefs. However, the arguments in the briefs overlap to a great extent. Thus, except where it is necessary to specify a separate argument made by a particular subset of defendants, we refer generally to the common positions or arguments of the "defendants" or "officers."

therein." *State v. J.P.*, 130 Wash.App. 887, 125 P.3d 215, 217 (2005); *see also* Wash. Rev.Code § 9A.52.025. Because burglary is a specific-intent crime, *e.g., State v. Belieu*, 112 Wash.2d 587, 773 P.2d 46, 54 (1989), the officers were specifically required to have probable cause as to the intent element. *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir.1994).

This case is not, as the officers argue, like *Murdock v. Stout*, 54 F.3d 1437 (9th Cir.1995), *abrogated in part as recognized by LaLonde v. County of Riverside*, 204 F.3d 947, 957–58 & n. 14 (9th Cir.2000), or other "true" burglary cases. To the contrary, here, as in *Frunz v. City of Tacoma*, 468 F.3d 1141 (9th Cir.2006), "[w]hile the information provided by the [witness] suggested that unauthorized people may be in the house, it also made clear that this was not a break-in by strangers." *Id.* at 1144. Crediting the plaintiffs' evidence, a jury could find that Officer Patrick's encounter with Kirby on the afternoon of January 15, 2005—during which Kirby specifically told Patrick that he "pa[id] the rent" and offered to show him a lease—and the police interactions with Taylor had put the officers on notice that "they were dealing, at worst, with some sort of ... property dispute." *Id.* at 1146.

We have long held that probable cause is lacking where the police are on notice that the dispute they are investigating "is [merely] civil in nature." *Allen v. City of Portland*, 73 F.3d 232, 238 (9th Cir.1995); *accord Stevens*, 298 F.3d at 883 ("[G]ood intentions do not overcome the rule that civil disputes do not give officers probable cause to arrest...."). These cases stand for the proposition that an arrest is not

justified by probable cause if a jury could conclude that reasonable officers, privy to the information known to the defendant officers, would have perceived that the matter under investigation amounted to a mere civil dispute. Taking the evidence in the light most favorable to the plaintiffs, a jury in this case could reasonably conclude that the officers were aware of the following facts: (1) Doug Taylor, a "friend of the Winlock Chief of Police,"[4] claimed to be renting and attempting to renovate the Rock Castle; (2) Taylor was upset because persons he described as "ex-tenants" had been entering the Rock Castle without his permission; and (3) the purported ex-tenants claimed to be the actual, current tenants of the Rock Castle. A jury could also conclude that the officers, knowing of the plaintiffs' claimed right of possession, nonetheless accepted Taylor's civil claim as superior and treated the plaintiffs as criminals. Because probable cause would be lacking under such circumstances, the district court erred by ruling, as a matter of law, that the officers' warrantless entry was supported by probable cause.[5]

**b. Consent**

■ As an alternative to probable cause and exigent circumstances, the officers argue that their warrantless entry was lawful because it was based on the voluntary consent of Doug Taylor, with the actual or apparent authority to grant such consent. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Taking plaintiffs' evidence as true, however, Taylor did not have actual authority to consent, nor could reasonable officers have construed Taylor's purported consent as authorizing their entry into the

4. According to the plaintiffs' evidence, Officer Patrick used this phrase to describe Taylor.

5. Because the application of the exigent-circumstances exception is foreclosed by the

lack of probable cause, *see Kirk*, 536 U.S. at 638, 122 S.Ct. 2458, we do not address whether exigent circumstances existed.

Rock Castle. The officers' reliance on Taylor's consent was justified only if they reasonably believed that Taylor was the proper tenant and occupant of the Rock Castle, or shared "mutual use and joint access" with the plaintiffs. *United States v. Ruiz*, 428 F.3d 877, 880 (9th Cir.2005). For all the reasons set forth above in the analysis of probable cause, it was not objectively reasonable for the police to believe that Taylor was the proper tenant of the Rock Castle. Moreover, the one thing that *was* clear was that possession of the Rock Castle was either entirely in the plaintiffs or entirely in Taylor. Thus, no reasonable officer could have believed that "use and ... access" of the house was *mutual.*

Because the facts viewed in the light most favorable to the plaintiffs do not support either of the claimed exceptions to the warrant requirement—probable cause plus exigent circumstances or consent—the summary judgment record demonstrates a constitutional violation as to the warrantless entry claim.

### 2. Warrantless arrest

■ In addition to the warrantless entry, plaintiffs assert a separate Fourth Amendment claim for illegal warrantless arrest. Summary judgment was also inappropriate as to this claim. First, if the entry was illegal, the arrest was as well. *Kirk*, 536 U.S. at 637–38, 122 S.Ct. 2458. Second, even if the officers entered lawfully, an arrest—with or without a warrant,

in public or in a home—must be justified by probable cause. *Wong Sun v. United States*, 371 U.S. 471, 479, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

For all the reasons stated above, the district court erred when it ruled that the officers had probable cause to believe the plaintiffs had committed the crime of burglary. As to probable cause to arrest for misdemeanor minor-in-possession, we recognize that the officers seriously dispute plaintiffs' version of how the entry occurred and what the officers could have seen upon entering the house. Nonetheless, at this stage of the proceedings, we take plaintiffs' version of the events (i.e., that no alcohol was present in or visible from the living room where the officers arrested the plaintiffs) as true. At trial, the jury may well find for defendants and conclude that there was probable cause to arrest the plaintiffs for the misdemeanor offense of minor-in-possession. However, for purposes of the qualified immunity determination, we must take the plaintiffs' evidence as true. When the evidence is viewed in this light, a jury could reasonably conclude that the officers lacked probable cause to arrest plaintiffs when they entered the Rock Castle.[6]

### 3. Excessive force

■ The plaintiffs also raise a separate Fourth Amendment claim for use of excessive force. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir.2007). The main basis for this claim is the force

---

6. We note that the plaintiffs' argue—citing *McKenzie v. Lamb*, 738 F.2d 1005 (9th Cir. 1984) (Kennedy, J.)—that even if their initial arrests had been justified as to the misdemeanor offense, they would be entitled to recover damages for the additional harm caused when the officers booked them on unjustifiably serious felony charges. *See id.* at 1101 ("[A]ppellants may recover for other injuries caused by acts independent of their arrest even if the arrests are found to be supported by probable cause. For example, appellants were charged with both ... [a misdemeanor and a felony]. The extra felony charge, if unjustified, may have caused injury independent of that caused by the misdemeanor arrest."). Because this issue may turn on the resolution of disputed facts, we leave plaintiffs' *McKenzie* argument for the district court to address in the first instance.

used in the arrests themselves, including the pointing of guns.

The officers' claim that "[i]t is undisputed that no physical force was used" is not persuasive. To the contrary, on the basis of the summary judgment record, a jury could reasonably conclude that the forcible entry and takedown of the plaintiffs—including physically forcing two plaintiffs to the ground and pointing a gun at the head of at least one plaintiff—constituted not only a use of force, but an *unreasonable* one. *See Baldwin v. Placer County*, 418 F.3d 966, 970 (9th Cir.2005) (holding similar "para-military style" entry and arrest of pot-growing dentist unreasonable, where record revealed no basis to believe such force was required to protect officer safety or for other legitimate reasons); *see also Frunz*, 468 F.3d at 1146 ("Bursting through the ... door unannounced with guns drawn and handcuffing the occupants ... was neither necessary nor reasonable .... No reasonable officer familiar with the law of searches and seizures could have thought otherwise."). Taking plaintiffs' evidence as true, plaintiffs have alleged a violation of the Fourth Amendment.

### 4. Search after entry

■ After entering and arresting the plaintiffs, the officers searched the Rock Castle without a warrant for up to an hour. They claim this warrantless search was authorized either as a search incident to a valid arrest, because beer cans were in plain view from a lawful vantage point, or by Taylor's consent. It is well settled that a home search predicated on an illegal entry is invalid. *See, e.g., United States v. Hudson*, 100 F.3d 1409, 1420 (9th Cir.1996) (for plain view exception to apply, "'the initial intrusion must be lawful'"); *United States v. Howard*, 828 F.2d 552, 556 (9th Cir.1987) (where entry is invalid, subse-quent consent to search is ineffective); *see also United States v. Bulacan*, 156 F.3d 963, 969 (9th Cir.1998) (search incident to arrest invalid where arrest is illegal). Thus, the search here can only be valid if the predicate entry was valid. On the facts alleged, plaintiffs have established that, following the officers' entry into the Rock Castle, the search of the house violated plaintiffs' Fourth Amendment rights.

### 5. Whether plaintiffs' Fourth Amendment rights were clearly established

The district court did not reach the second *Saucier* step—whether the officers "could have reasonably believed [based on clearly established law at the time they acted] that [their] conduct did not violate the Constitution." *Adams v. Speers*, 473 F.3d 989, 993 (9th Cir.2007). However, this step does not provide a basis to affirm the grant of qualified immunity.

At the time of the events in question here, the relevant Fourth Amendment law, as discussed above, was clearly established. Assuming the facts as viewed in the light most favorable to the plaintiffs, no reasonable officer could have believed that the warrantless entry, the arrests, the search, or the level of force used here was justified. *Cf. id.* at 990–91 ("Accepting the [plaintiffs'] facts as true, this case falls within the obvious...."). Thus, defendants are not entitled to qualified immunity on plaintiffs' Fourth Amendment claims. Plaintiffs are entitled to have the merits of their Fourth Amendment claims submitted to a jury.

### B. J.A.T.'s claim for deliberate indifference to medical need

■ J.A.T. alleges that Officers Patrick and Munyan and the City of Winlock were deliberately indifferent to her serious medical needs in violation of her due process

rights under the Fourteenth Amendment. An arrestee has "the established right to not have officials remain deliberately indifferent to [he]r serious medical needs" while in police custody. *Gibson v. County of Washoe, Nev.,* 290 F.3d 1175, 1187 (9th Cir.2002). To state a claim, the detainee must show that the relevant officer was aware of a serious medical need and disregarded that need. *Id.*

Taking the facts alleged by J.A.T. as true, J.A.T. repeatedly asked to take her epilepsy medication, but the officers denied her permission to do so for a period which extended over an hour. She later suffered a seizure en route to the juvenile detention facility. These facts, if believed, would constitute a constitutional violation.

Whether the officers "could have reasonably believed that [their] conduct did not violate the Constitution," *Adams,* 473 F.3d at 993, presents a closer question. Nevertheless, in January 2005, it was clearly established that an officer could not ignore the serious medical need of an arrestee after the officer had been made aware of that need. Whether the officers here could have reasonably believed that J.A.T. did not have a serious medical need—or that some other legitimate consideration prevented them from attending to her serious medical need—depends on the development of additional facts. Accordingly, we reverse and remand for further proceedings on this claim.

### C. Denial of access to telephones

 Plaintiffs claim that Officers Patrick and Munyan, and the City of Winlock violated their constitutional rights when, after their arrests and before they were taken to jail or juvenile hall, the officers denied plaintiffs' repeated requests to make phone calls.

In *Halvorsen v. Baird,* 146 F.3d 680 (9th Cir.1998), we recognized that a detainee has a substantive due process right not to be held incommunicado. *Id.* at 690. There, we held the defendants violated this right when they denied the plaintiff telephone access for six hours. In *Strandberg v. City of Helena,* 791 F.2d 744 (9th Cir. 1986), we also recognized that detainees and prisoners have a First Amendment right to telephone access, but held that the defendants did not violate this right when they delayed plaintiff's access for only thirty minutes. *Id.* at 747.[7] Although *Strandberg* and *Halvorsen* recognize a right of detainees to communicate with the outside world, they also grant flexibility to law enforcement officers to honor this right in a way that takes into account the logistical and security requirements of booking, transport and confinement. *See Halvorsen,* 146 F.3d at 689–90; *Strandberg,* 791 F.2d at 747.

Here, taking the evidence in the light most favorable to plaintiffs, a reasonable jury could find that: 1) they were held for as much as two and a half hours (an hour at the house and one and a half hours at

---

7. Plaintiffs also assert a procedural due process right to phone calls under *Carlo v. City of Chino,* 105 F.3d 493 (9th Cir.1997). *See id.* at 499 (California statute created liberty interest in "mandatory" three phone calls, and interest was protected by procedural due process). However, *Carlo* is inapplicable here because plaintiffs cannot point to any Washington statute or rule that establishes a liberty interest in a phone call, other than a call to a *lawyer.* *Cf.* Wash.Super. Ct. Cr. R. 3.1(c)(2) (provid-

ing right to call a lawyer). Plaintiffs did not ask to call a lawyer. Plaintiffs cite a statute stating that an arrestee must be allowed "to communicate *with his friends* or with an attorney." RCW 9.33.020(5) (repealed 1975) (emphasis added), *quoted in City of Tacoma v. Heater,* 67 Wash.2d 733, 409 P.2d 867, 871 (1966). But that statute was repealed in 1975, and we are aware of no similar provision replacing it.

the station); 2) they repeatedly asked to call their parents; 3) for much of this time they were not actively engaged in booking or transport procedures, but rather were sitting in a waiting room or holding cell; and 4) the officers failed to accommodate the plaintiffs' repeated requests to inform their families or loved ones of their whereabouts, when the officers were in a position to grant the request without compromising security or significantly impairing the efficiency of their booking procedures. Under these facts, plaintiffs have alleged a constitutional violation under *Halvorsen* and *Strandberg*.

 Nonetheless, we affirm the grant of qualified immunity pursuant to the second *Saucier* step. Although, at the time of the events in question here, the constitutional right to telephone access—in general—was recognized by *Halvorsen* and *Strandberg*, the contours of that right were vague enough that a reasonable officer would not have been on notice that the denial of phone calls for two and a half hours, in the course of a start-and-stop process of arrest, booking and transport, would violate plaintiffs' constitutional rights. Given the lack of clarity that existed as to when an incommunicado detention crosses the constitutional line, the officers "could have reasonably believed that [their] conduct did not violate the Constitution." *Adams*, 473 F.3d at 993. As to this claim, the district court properly determined that the officers were entitled to qualified immunity.

### D. Procedural due process claim for illegal "eviction"

 In addition to their Fourth Amendment claims for illegal entry, search and arrest, plaintiffs Gallagher and Bylsma alternatively attempt to characterize the officers' actions at the Rock Castle as an "eviction" in violation of plaintiffs' due process rights to pre-deprivation notice and a hearing. Here, however, the officers did not purport to terminate plaintiffs' legal right to possess the Rock Castle. Although the officers' actions in seizing and arresting the plaintiffs temporarily interfered with plaintiffs' enjoyment of their possessory rights, that would be the consequence in any Fourth Amendment seizure case. We are satisfied, based on the summary judgment record, that the plaintiffs were not "evicted," and that they therefore must seek their remedies under the Fourth Amendment, not through a separate action based in procedural due process. The district court properly granted summary judgment on this claim.

## II. Status of the Napavine and Vader officers and the municipalities

### A. Officers asserting a minor or tangential role

 While joining the Winlock/Toledo officers' argument that no constitutional violations occurred, the Napavine and Vader officers also argue that their participation in any such activities did not amount to "integral participation." *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir.2004) (citing *Chuman v. Wright*, 76 F.3d 292, 293–94 (9th Cir.1996)).

The plaintiffs, however, argue that the Napavine and Vader officers are not entitled to judgment as a matter of law because (1) there has not been discovery sufficient to determine which officers did what, to whom, when, where, and with knowledge of what facts; and (2) even the limited record currently available provides sufficient evidence to defeat summary judgment as to the Napavine and Vader officers. We agree.

Without deposing the defendants, the plaintiffs have not had a fair opportunity to sort out the roles of the various officers.

See *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 964 (9th Cir.2004) (holding that plaintiff who "passes ... initial hurdle" of alleging a constitutional violation in complaint "is entitled to enough discovery to permit the court to rule on a defendant's subsequent summary judgment motion"). Moreover, at least one of the defense declarations states that Officer Reeder (the Vader officer) was among the officers who went through the door with Officer Patrick in the initial entry, putting him squarely in the midst of the alleged violations. As to the Napavine officers, the record leaves unclear what information they received regarding the basis for the entry and search, thus leaving similarly unclear whether a reasonable officer in their position would have realized the matter was a mere civil dispute. At this point, it is premature to conclude as a matter of law either (a) that the Napavine officers merely guarded the back door, as they say, or (b) that, even if all they did was provide armed guard at the door, those actions did not constitute "integral participation" under *Boyd* and *Chuman*.

On remand, the district court may, after discovery, allow the Napavine and Vader officers to renew their defense that they did not have an integral role in the events giving rise to plaintiffs' Fourth Amendment claims.

### B. The municipalities

[14, 15] Municipalities cannot claim qualified immunity, and thus are not usually in a position to move for summary judgment prior to discovery. In this case, however, an early grant of summary judgment in favor of the municipalities was justified by the district court's rulings that

---

8. We express no opinion as to whether the plaintiffs can establish the other elements of a *Monell* claim. On remand, following the completion of discovery, the municipal defen-

the plaintiffs' constitutional rights were not violated. *See Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir.2006) (deprivation of constitutional right is element of municipal § 1983 violation under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Accordingly, insofar as we reverse the district court's rulings that no constitutional violations occurred, we also reverse the grant of summary judgment in favor of the municipalities.[8]

**AFFIRMED in part, REVERSED in part and REMANDED for further proceedings consistent with this disposition. Plaintiffs shall recover their costs on appeal.**

---

dants may renew their motion for summary judgment under *Monell*.

