**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUN 1 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| LISA EARL, individually and on behalf of on behalf of the ESTATE OF JACQUELINE SALYERS, on behalf of; et al., | No. 20-35217 |
| | D.C. No. 3:17-cv-05315-BHS |
| Plaintiffs-Appellants, | MEMORANDUM* |
| v. | |
| SCOTT CAMPBELL, and the marital community of Scott and Jane Doe Campbell; et al., | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted April 14, 2021
Seattle, Washington

Before: O'SCANNLAIN, GRABER, and CALLAHAN, Circuit Judges.

Lisa Earl et al., including the Estate of decedent, Jacqueline Salyers,

(collectively referred to as "Salyers") appeal from the district court's grant of

summary judgment to Officer Scott Campbell et al., including the City of Tacoma

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

and fellow police officers, on Salyers's excessive-force, substantive-due-process, and denial-of-access claims related to Officer Campbell's fatal shooting of Salyers. We repeat the facts only as necessary.

## I

Salyers argues that the district court erred in determining that Officer Campbell was entitled to qualified immunity from excessive force claims on the ground that he did not violate a right clearly established at the time of the shooting. We review de novo. *Elder v. Holloway*, 510 U.S. 510, 516 (1994).

The use of deadly force by a police officer is a Fourth Amendment seizure, *Tennessee v. Garner*, 471 U.S. 1, 7 (1985), which may be unconstitutional if the officer's actions are objectively unreasonable under the circumstances, *Graham v. Connor*, 490 U.S. 386, 394–97 (1989). Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)).

Qualified immunity protects officials from liability unless "at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (editing marks omitted). "[E]xisting precedent must have placed the . . . question beyond debate." *Id.*

We need not reach the question of whether Officer Campbell's conduct was objectively reasonable because we decide that he did not violate a clearly established right.

A

Salyers argues that in 2016, clearly established law prohibited shooting the driver of a slow-moving car that Officer Campbell could have side-stepped. To the contrary, even a slow-moving car not pointed directly at an officer can pose a threat justifying deadly force. *Wilkinson v. Torres* involved such a threat notwithstanding the suspect car's slow speed and path of travel away from the officers. 610 F.3d 546, 551–52 (9th Cir. 2010). Our court found deadly force reasonable because the driver had ignored commands and "attempted to accelerate within close quarters of two officers on foot." *Id.* at 551. Even if the officers were "out of harm's way" in hindsight, "the critical inquiry is what [the shooting officer] perceived" at the time. *Id.* Officer Campbell believed he was in imminent danger when Salyers, ignoring police commands, turned the car's wheels toward him and accelerated in close quarters. In such circumstances, the reasonableness of deadly force is not beyond debate. *See also Monzon v. City of Murrieta*, 978 F.3d 1150 (9th Cir. 2020).

Salyers directs our attention to similar but non-controlling cases. Where an officer deliberately approaches a car traveling away from him, our court has

3

questioned whether he could reasonably perceive a threat to his safety. *See, e.g.,*

*Orn v. City of Tacoma*, 949 F.3d 1167, 1176–78 (9th Cir. 2020) (emphasizing that

the officer was "never at risk" and "never in the path" of the car); *Adams v. Speers*,

473 F.3d 989, 992–94 (9th Cir. 2007) (noting the officer "did not fire to protect

other officers" but rather "to prevent the suspect's flight"). Likewise, an officer

should know that he can avoid the danger of a stopped or "non-accelerating" car.

*Villanueva v. California*, 986 F.3d 1158, 1172 (9th Cir. 2021) (describing *Acosta v.*

*City and County of San Francisco*, 83 F.3d 1143 (9th Cir. 1996) *abrogated on*

*other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)). But no controlling

authority has placed deadly force off limits where an officer on foot perceives a car

*accelerating in his direction*—which is what Officer Campbell saw here.

At most, Salyers has shown that the instant case lies between cases like

*Monzon* and *Wilkinson*, on the one hand, and cases like *Orn* and *Adams*, on the

other. Because none of them "squarely governs" here, Officer Campbell's conduct

fell within the "hazy border between excessive and acceptable force," which

entitles him to qualified immunity. *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004)

(per curiam) (quoting *Saucier*, 533 U.S. at 206).

B

Salyers also argues that in 2016, clearly established law prohibited Officer

Campbell's "subsequent gunshots" even if his initial gunshots were objectively

4

reasonable. In about two seconds, Officer Campbell fired a total of eight shots in a single series without pause. In the absence of a controlling authority, we ask whether "a robust consensus of cases of persuasive authority" prohibits Officer Campbell's conduct here. *al-Kidd*, 563 U.S. at 742 (internal quotation marks omitted).

Salyers lacks a robust consensus to support her position. Cases where an officer shoots, pauses, and shoots again are distinguishable because the officer had time to assess whether the threat subsided. *See, e.g.*, *Tubar v. Clift*, 453 F. Supp. 2d 1252, 1257 (W.D. Wash. 2006), *aff'd in part, dismissed in part*, 286 F. App'x 348 (9th Cir. 2008). Similarly, courts may doubt that an officer reasonably perceives a threat where he pursues a car to continue shooting after it passes. *See, e.g.*, *Waterman v. Batton*, 393 F.3d 471, 475, 482 (4th Cir. 2005). And cases where every shot was fired from safety do not tell us when it is excessive to keep shooting. *See, e.g.*, *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 414 (5th Cir. 2009); *Smith v. Cupp*, 430 F.3d 766, 774 (6th Cir. 2005); *Abraham v. Raso*, 183 F.3d 279, 295 (3d Cir. 1999); *Ellis v. Wynalda*, 999 F.2d 243, 247 (7th Cir. 1993).

Officer Campbell fired continuously without pause, and did not deliberately move toward the danger after it passed him. In contrast to the out-of-circuit cases, the record here does not justify the inference that Officer Campbell must have realized he had neutralized the threat and stopped shooting earlier than two

5

seconds. Even Salyers's expert testified that an average officer could shoot twice in just the time it takes to realize a threat has subsided and to decide to stop shooting.

The instant case is the kind of "tense, uncertain, and rapidly evolving" scenario in which officers must make "split-second judgments." *Graham*, 490 U.S. at 397. For this reason, we have rejected the notion that "officers must justify every shot" where deadly force is justified and do so here. *Monzon*, 978 F.3d at 1159 n.8; *Wilkinson*, 610 F.3d at 552–53 ("[I]t makes no difference . . . whether [he] fired seven rounds or eleven."). No robust consensus of authorities dictates otherwise.

## II

Salyers argues the district court erred in granting summary judgment for Officer Campbell on her substantive-due-process claims. For Salyers to prevail, Officer Campbell's conduct must "shock[] the conscience." *Porter v. Osborn*, 546 F.3d 1131, 1137 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). In situations where deliberation is impractical, we apply the heightened "purpose to harm" standard. *Wilkinson*, 610 F.3d at 554. *See also Porter*, 546 F.3d at 1137.

Salyers asserts that Officer Campbell may have fired because he was angry or because he wanted to arrest Kenneth Wright, but no evidence in the record supports either inference. *See Gonzalez v. City of Anaheim*, 747 F.3d 789, 797–98

6

(9th Cir. 2014) (en banc). Even if Officer Campbell misperceived the danger, there is "'no reason to believe that' [his] reaction was driven by anything other than his 'instinct . . . to do his job as a law enforcement officer.'" *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008) (quoting *Lewis*, 523 U.S. at 855). "[W]e need not scrutinize as closely . . . [his] decision about how best to minimize the risk to his own safety. . . ." *Wilkinson*, 610 F.3d at 554–55 (citing *Porter*, 546 F.3d at 1139).

III

Salyers argues the district court erred in granting summary judgment for Officer Campbell on her denial-of-access claims alleging that Detective Nasworthy, Detective Shafner, and Captain Taylor destroyed video evidence of the shooting. Salyers relies heavily on an expert opinion that "it is more likely than not that someone deleted archived video." But the same expert testified that the surveillance camera never recorded the shooting in the first place. The camera's color and infrared filter settings were configured such that it was "essentially useless" on the night of the shooting. Salyers provides no complete theory of what was deleted, when it was deleted, how it was deleted, or who deleted it. Accordingly, we agree with the district court that her claim is speculative, and she has not raised a triable issue of fact as to whether the City of Tacoma or the other officers covered-up evidence. *Delew v. Wagner*, 143 F.3d 1219, 1222–23 (9th Cir.

7

1998).

## IV

The district court's grant of summary judgment is AFFIRMED.